BRIAN J. STRETCH (CABN 163973)
United States Attorney

BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

THOMAS R. GREEN (CABN 203480)
Assistant United States Attorney

    1301 Clay Street, Suite 340S
    Oakland, CA 94612
    Telephone: (510) 637-3695
    Fax: (510) 637-3724
    E-Mail: Thomas.Green@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) NO. 16-00246 HSG |
| Plaintiff, | ) **AMENDED UNITED STATES' SENTENCING MEMORANDUM** |
| v. | ) |
| ARNOLD FISCHMAN, | ) Time: 2:00 PM<br>) Date: February 13, 2017 |
| Defendant. | ) Hon. Haywood S. Gilliam |

## I. INTRODUCTION

On September 19, 2016, defendant pled guilty to Possession of Child Pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). The government anticipates that the parties will argue for substantially different sentences to account for defendant's crime.

The parties agree that a guideline sentence for an Offense Level 30 crime for a defendant with no prior criminal history is a sentence ranging from 97 to 121 months. The United States Probation Office recommends a sentence of 60 months. For the reasons set forth below, the United States recommends a sentence of 78 months, which amounts to a substantial variance from the eight to ten-year sentence defendant faces. Defendant's crime also warrants a fine of $15,000, an expanded search condition and

limitation on future internet use, as described in the Sentencing Recommendation from the Probation Office, forfeiture, and a mandatory special assessment of $100.  The government also recommends that defendant be ordered to pay $5,000 in restitution to the only victim seeking restitution in this matter.

## II.   BACKGROUND

### A.   Offense Conduct

The factual statement of the plea agreement and the Probation Officer's Presentence Report ("PSR") accurately set forth the facts, and the government will not repeat them at length here.  The PSR sets forth the factual basis for the application of the base offense level of conduct and each of the sentencing enhancements applicable in this case.

Defendant came under the radar of the Department of Homeland Security after he distributed child pornography to under cover law enforcement officers acting independent of one another in Florida and New Zealand.  Using variations of his on-line moniker "fingertips," defendant engaged in one-to-one chats with the under-cover officers about their experiences with younger girls.  Among other things, defendant bragged that he chats with "moms and daughters who do each other."   More importantly, he described his own experience as an adult with a young girl in a chat he had with the under-cover law enforcement officer in New Zealand ("CII"):

> CII:          have u ever been with ynger??
>
> fingertips2u:  youngest 14
>
> CII:          kk
>
> fingertips2u:  a 3 som with my gf
>
> CII:          wow
>
>               were u both 14 too
>
> fingertips2u:  best ever
>
>               oh no
>
>               i was about 40 gf 30
>
> CII:          OMG for real??
>
>               how did u manage that??
>
> fingertips2u:  for real

AMENDED UNITED STATES' SENTENCING MEMORANDUM
CR 16-00246 HSG

2

*See* PSR ¶ 8. Defendant also sent the New Zealand law enforcement officer child pornography, including an image depicting the anal penetration of a young girl by an adult male. *See* PSR ¶ 18.

Defendant's on line correspondence with an HSI agent from Florida was less revealing, but significant in that the defendant maintained the chat with the under-cover agent even after the agent informed defendant she was only 14 years old during their chat. *See* PSR ¶ 13. After being informed he was communicating with a 14-year old girl, defendant advised the agent playing the 14-year old how to download Yahoo Messenger so they could continue their chat, and then proceeded to send child pornographic images to the agent posing as a minor. *See* PSR ¶¶ 13-14.

The investigation also uncovered chat conversations defendant had which demonstrated that his behavior with the under-cover agents was not isolated. Defendant chatted about watching his girlfriend and a 14-year old's sexual encounter in multiple chats. *See* PSR ¶ 22. He also carried on an extended chat with a self-described 14-year old girl. The content of the chat reflects that they exchanged pornographic images, and discussed defendant engaging in anal intercourse with the girl:

> Finger Tips:    i'd rather fuck your tight little asshole if you don't mind
> Girl:           so you liked lookin at my butt?
> Girl:           gawd yes shove your cock in my asshold and just pound me
> Finger Tips:    senseless

*See* PSR ¶¶ 24-25.

Defendant had a massive collection of child pornography. A search of defendant's home resulted in the seizure of eight different computers or hard drives containing child pornography, and more than 10,000 images and 150 videos of child pornography were recovered from defendant's devices. *See* PSR ¶ 27. Defendant's collection included extended videos in which three to five-year old girls were raped or otherwise forced to participate in sexual encounters with adults. *See* PSR ¶ 28. His collection included sadistic images involving various sexual activities with toddlers. *See* PSR ¶ 29.

B.    **Victim Impact**

The National Center for Mission and Exploited Children ("NCMEC") was able to identify the child victims depicted in approximately 51 videos and 2,337 images defendant possessed, reflecting that the majority of the images and videos possessed by defendant involved images of victims who are

AMENDED UNITED STATES' SENTENCING MEMORANDUM
CR 16-00246 HSG

3

unknown, or have not been identified by law enforcement. *See* PSR ¶ 27. Defendant's collection included at least one image or video from at least 138 different known series of child pornography. *See* PSR ¶ 31. Of the known identified series of child pornography in defendant's collection, who were notified or not notified as requested by the victims through the victim notification process, only one victim from one series, "Casseaopeia" from the Lighthouse Series, has submitted a request for restitution.

The victim impact statement from the victim "Casseaopeia" expresses the ongoing grief, humiliation and fear she continues to suffer from today, and reflects the nature of ongoing harm suffered by the other hundreds and perhaps thousands of victims in defendant's collection:

> Between the ages of 3 – 11 years old, I was raped, molested, beaten and humiliated. My abuse was photographed, videotaped and sent all over the Intent for men/women to see and get off on. If I didn't perform for the camera or didn't perform right for the camera, I was hit and punished. I will never have back that part of my life. I will never have back my innocent years.
>
> Yes, the rape and molestation stopped, but I continue to be victimized by these perverted rapists and kiddy porn people passing around the distributing pornographic videos and images of me. No child should be put through all that I went through let alone have to live with the knowledge that people continue to watch and take pleasure in my abuse and not be able to do anything to stop it.
>
> In know that my image is being downloaded and watched by these kiddy porn perverts all across the country. I worry that they know who I am. I worry that they will come and look for me. I have worry that they will come and hurt my family. I'm terrified that someone is stalking me. I have changes my appearance so they can't fine me, but I still have panic attacks when I think some is looking at me because they recognize me from the Internet. I have difficulty working and being in public because of anxiety and want to hide somewhere safe.
>
> I am ashamed and angry that I didn't speak up and stop the abuse and now images of my younger sisters are also on the Internet. I am embarrassed that the tapes and pictures are out there for some kiddy porn pervert to take pleasure in. My abused showed me photographs and videos of other children to convince me that what we were doing was normal so I worry that these kiddy porn perverts are using my images as a tool to persuade other children to do the type of sexual thinks I had to do.
>
> I suffer from PTSD and chronic depression. I am working on getting better, but knowing that these kiddy porn perverts are still downloading and distributing my images makes recovery more difficult. It prevents the

wound from healing.

> What I have lost is irreplaceable, but I want some form of justice to help me become a survivor and not just a victim of this continuing abuse. In my opinion there is no fixing them. They are truly a whole different form of monster. I believe these perpetrators deserve to be locked away and the key thrown away.

The victim requests a minimum of $12,000 in restitution, as well as $1,500 in attorneys' fees. *See* PSR ¶ 32. Her request is supported by an economic analysis of the damages she has suffered, including the cost of therapy to address the trauma she continues to suffer today.

### C.  Sentencing Guideline Range and Plea Agreement

The defendant pled guilty pursuant to a Rule 11(c)(1)(B) plea agreement, and the parties agreed to the following Guidelines calculation:

| | | |
|---|---|---:|
| a. | Base Offense Level:<br>(U.S.S.G. §2G2.2(a)(1)): | 18 |
| b. | Specific Offense Characteristics:<br>Material involved prepubescent minor (U.S.S.G. §2G2.2(b)(2)):<br>Offense involved distribution (U.S.S.G. §2G2.2(b)(3)(F)):<br>Offense involved sadistic or masochistic conduct or other depictions of violence (U.S.S.G. §2G2.2(b)(4)):<br>Offense involved use of computer (U.S.S.G. §2G2.2(b)(6)):<br>Offense involved more than 600 images (U.S.S.G. §2G2.2(b)(7)(D)): | +2<br>+2<br><br>+4<br>+2<br>+5 |
| c. | Acceptance of Responsibility: If defendant meet the requirements of U.S.S.G. §3E1.1, he may be entitled to a three-level reduction. | <u>-3</u> |
| d. | Adjusted Offense Level: | 30 |

A total offense level of 30 and Criminal History Category I results in a sentencing range of 97 to 121 months. As discussed later in this Memorandum, the government believes a sentence of 78 months, to be followed by nine years of supervised release, is an appropriate sentence taking into account the factors set forth in 18 U.S.C. § 3553(a), provided defendant accepts full responsibility for his conduct.

## III.  GOVERNMENT'S SENTENCING RECOMMENDATION

### A.  Section 3553(a) Factors

#### 1.  Nature and Circumstances of the Offense

The nature and circumstance of defendant's offense are well described in the PSR and in the

recommendation of the probation officer.  Defendant was caught trading child pornography on line, including child pornography depicting the penetration of young girls estimated to be between the ages of three and five.  In total, defendant had more than ten thousand images and 150 videos in his possession, a very large collection spread across eight devices found in his possession.  Disturbing chat conversations were recovered from the defendant's devices, including a chat demonstrating defendant's interest in a sexual encounter with a 14-year old.  Multiple chats were recovered in which defendant made reference to a sexual encounter he shared with his girlfriend and a different 14-year old, described in one chat as a girl from the neighborhood.  The chats recovered indicate defendant sent child pornography to the persons he chatted with, including children, and an agent posing as a 14-year old.

### 2. The Seriousness of the Offense

The Supreme Court recently opined on the seriousness of child pornography possession, specifically the harm the crime causes to victims.  *See Paroline v. United States*, 134 S.Ct 1710 (2014).  In *Paroline* the issue before the Court was what restitution a defendant owed to a victim when he possessed images of her on his computer, and the Court's spoke powerfully of the type of harm possession of child pornography creates for the victims: "The harms caused by child pornography, however, are still more extensive because child pornography is 'a permanent record' of the depicted child's abuse, and 'the harm to the child is exacerbated by [its] circulation." *Id.* at 1716-17, *quoting*, *New York v. Ferber*, 458 U.S. 747, 759 (1982).  "Because child pornography is now traded with ease on the Internet, 'the number of still images and videos memorializing the sexual assault and other sexual exploitation of children, many very young in age, has grown exponentially.'" *Id. quoting,* United States Sentencing Comm'n, P. Saris et al., Federal Child Pornography Offenses 3 (2012).

The Court recognized that possession of child pornography is not a passive crime: "[t]hese crimes were compounded by the distribution of the images of her abuser's horrific acts, which meant the wrongs inflicted upon her were in effect repeated; for she knew her humiliation and hurt were and would be renewed into the future as an ever-increasing number of wrongdoers witnessed the crimes committed against her." *Id.*  The government emphasizes the Supreme Court's analysis here not to make a case for restitution (which is discussed below), but because the Court unequivocally recognized the real harm to real human beings that results from the conduct in which the defendant engaged.

The impact statement detailed above demonstrates that the possession and distribution of child pornography creates ongoing harm to the child-victims. As many of the children write, the enduring and harmful ramifications of the original sexual abuse are compounded by the seemingly-endless dissemination and viewing of it by others, like the defendant.

### 3. The Need to Deter Criminal Conduct and Protect the Public

Defendant's possession of child pornography was extensive, and represents the depth of his criminal conduct vis-à-vis the hundreds or thousands of victims depicted in the images and videos he possessed. More importantly, in terms of protecting the public, defendant's chats reflect his interest in engaging in sexual conduct with minors, and reflect that he had at least one such prior encounter with a girl from the neighborhood. This exchange reflects a direct threat to the community at large, and the community in which he lives. The defendant will likely characterize statements reflecting his experiences and discussions of possible encounters as mere fantasy. But his own words speak for themselves, and at a minimum reflect both an interest in sex with minors and a comfort level in chatting with minors about live encounters. The fact that he sends child pornography to minors and seems to have received the same in return from them, reflects a degree of association with minors that goes well beyond an individual whose behavior ends at the mere possession of illicit images. A substantial sentence should be imposed to deter criminal conduct and protect the public.

### B. The Government Recommends a 78 Month Prison Sentence to Be Followed by Nine Years of Supervised Release.

After substantial consideration of the facts of this case, and the arguments presented by defendant regarding bases for mitigation, the government recommends a sentence of 78 months, to be followed by nine years of supervised release. A 78-month sentence represents a downward variance that takes into account defendant's upbringing and the life he has lived, while not minimizing the very real damage his crimes have caused, and the risk his crimes represent. It represents the mid-point between the United States Probation Office's recommendation and the low end of the guideline sentence he faces. Had the government charged defendant with distribution, defendant would be facing a five-year mandatory minimum sentence. Here, defendant not only engaged in distribution, but he distributed child pornography to children. Moreover, he did so in the context of conversations in which he and the

children discussed engaging in sexual activities together.  Though the government is not aware of communications which went the next step towards arranging meetings or meeting with minors, defendant's known conduct took his interactions with minors to the precipice of such a possibility.  If not for the charitable works of defendant, his lack of a criminal record, and possible abuse he may have suffered as a youth, the government would not recommend a variance down to a 78-month sentence.  The defendant faces a mandatory minimum of five years of supervised release for his crime, and a maximum term of life.  The government recommends nine years of supervised release to follow his prison term, which would bring his total federal supervision, including time of incarceration, to 15 years and six months.

## IV.     RESTITUTION

One victim, "Casseaopeia," from the *Lighthouse* Series, seeks restitution pursuant to 18 U.S.C. § 2259(a).  The materials submitted by counsel representing the victim is being filed separately under seal, as Exhibit 1 to this memorandum.  Based on these submissions, and as discussed below, the government asks that the Court order the defendant to pay $5,000 in restitution to the victim.  The government understands that defendant does not oppose the restitution requested by the government, an amount supported by both statute and case law.

Restitution in this case is mandatory.  Title 18, United States Code, Section 2259(a) provides that "the court shall order restitution for any offense under this chapter."  Section 2259(b)(4)(A) states that [t]he issuance of a restitution order under this title is mandatory."  Like possession of child pornography, Section 2259 falls within Chapter 110.  Once the statute is satisfied, "[t]he court may not decline to issue an order under this section because of:  (i) the economic circumstances of the defendant; or (ii) the fact that a victim has, or is entitled to, receive compensation for his or her injuries from the proceeds of insurance or some other source

In *Paroline*, the issue before the Court was whether a defendant who possessed images of a child-victim is liable for restitution to that victim years later for all or part of the financial losses the victim incurred for expenses such as counseling and lost income as a result of the trauma experienced dissemination of her images to thousands of individuals such as the defendant.  *Paroline*, *supra*, 134 S.Ct. at 1716-18.  The Court found that liability for restitution was appropriate under these

circumstances, holding that "[t]he cause of the victim's general losses is the trade of her images. And Paroline is part of that cause, for he is one of those who viewed her images." The Court stated:

> "Denying restitution in cases like this would also be at odds with the penological purposes of § 2259's mandatory restitution scheme. In a sense, every viewing of child pornography is a repetition of the victim's abuse. One reason to make restitution mandatory for crimes like this is to impress upon offenders that their conduct produces concrete and devastating harms for real, identifiable victims…It would be inconsistent with this purpose to apply the statute in a way that leaves offenders with the mistaken impression that child-pornography possession (at least where the images are in wide circulation) is a victimless crime."

*Id.* at 1727.

There is no requirement to prove particularized conduct leading to particularized harm. *See id*. All that matters is that a victim's loss was generally attributed to the trafficking and viewing of the victim's images. The materials submitted by the victim easily exceed that burden of proof. Counsel for the victim known as "Casseaopeia" has submitted a request asking that the Court order the defendant to pay no less than $12,000 for one image of Casseaopeia (out of a total estimated economic loss of approximately $1,078,159). *See*, Exhibit 1, Letter from Sara J. Powell. Counsel for "Casseaopeia" reports that a total of $229,250 in restitution to "Casseaopeia" had been ordered, and that of that total, $63,300.00 has been paid. The Child Exploitation and Obscenity Section ("CEOS") of the U.S. Department of Justice has started to compile information provided by federal prosecutors pertaining to restitution ordered by sentencing courts for specific victims. The CEOS data reflects that for *reported Federal cases,* sentencing courts have ordered restitution paid to the victims of the Lighthouse series in 56 federal cases, with an average amount in excess of $4,000, and amounts ranging from $500 to $50,000 for persons convicted of possession of child pornography. In light of all the available information, a restitution award of $5,000 is appropriate, and is neither "nominal" nor "token."

//
//
//
//
//
//

## V. CONCLUSION

For the reasons discussed above, the government respectfully requests that the Court sentence defendant to 78 months in prison, to be followed by nine years of supervised release, $5,000 in restitution to the victim "Casseaopeia," a $15,000 fine, forfeiture, and a $100 special assessment.

Dated:  February 7, 2017

BRIAN J. STRETCH
United States Attorney

         /s/
THOMAS R. GREEN
Assistant United States Attorney

# EXHIBIT 1

Regarding: EXHIBIT 1 UNDER SEAL
This filing is in paper or physical form only, and is being maintained in the case file in the Clerk's office.   If you are a participant on this case, this filing will be served in hard-copy shortly.  For information on retrieving this filing directly from the court, please see the court's main web site at http://www.cand.uscourts.gov under Frequently Asked Questions (FAQ).
This filing was not e-filed for the following reasons:
EXHIBIT 1 UNDER SEAL