WILLIAM L. OSTERHOUDT
Law Offices of William L. Osterhoudt
135 Belvedere Street
San Francisco, CA 94117
Telephone: 415/664-4600
Facsimile: 415/664-4691
Email: osterhoudt@aol.com

GAIL SHIFMAN
Law Office of Gail Shifman
2431 Fillmore Street
San Francisco, CA 94115
Telephone: 415/551-1500
Facsimile: 415/551-1502
Email: gail@shifmangroup.com

Attorneys for Defendant
ARNOLD FISCHMAN

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>  v.<br><br>ARNOLD FISCHMAN,<br><br>          Defendant. | No. CR 16-0246-HSG<br><br>**DEFENDANT ARNOLD FISCHMAN'S MOTION TO REMAIN ON BOND PENDING DESIGNATION BASED ON EXCEPTIONAL REASONS UNDER 18 U.S.C. §3145(c)**<br><br>Date:  February 13, 2017<br>Time: 2:00 p.m. |

## I.  INTRODUCTION

Arnold ("Arnie") Fischman comes before the Court on February 13, 2017 for sentencing following a plea of guilty to one count of Possession of Child Pornography in violation of 18 U.S.C. §

2252(a)(4)(B) and (b)(2).  Pursuant to 18 U.S.C. § 3145(c) and because Mr. Fischman is not a flight risk or a danger to the community and because there are exceptional reasons to continue him on pretrial release on the same conditions as imposed when he made his initial appearance on June 16, 2016[1], Mr. Fischman requests that the Court permit him to self - surrender to his designated facility within the BOP.  As detailed in the Presentence Report (PSR), Mr. Fischman is not a flight risk or danger to the community and "is viewed as a good candidate for voluntary surrender.[2]"  PSR, **Sentencing Recommendation**, Page 3.

    Mr. Fischman's personal history is extensively detailed in the PSR, Defendant's Sentencing Memorandum, the 46 letters of support and in the sentencing video (Dkt. 35) and by now the Court is undoubtedly familiar with the man that appears before the Court.  Specific details of his well lived life will not be repeated here save it so say that Mr. Fishman is a man of unique and remarkable qualities, with unusual humility, grace, generosity, self-reflection and intelligence.  He comes before the Court without any criminal contact or record in his 69 years, and continues to demonstrate extraordinary post-offense rehabilitation in the more than two years since the search of his home in January, 2015, through his self-motivated undertaking of intensive psychotherapy and his continued commitment to service of others in the community.  Mr. Fischman's ability to remain present while undergoing the stress of the tragedy that brings him before the Court enabled him to focus on exploring and understanding the root causes during his intensive psychotherapy while also raising his shy son to become a young man, recommitting himself to his life-long friends and loved ones and serving those in the community with breast cancer.  This enduring strength and dedication are testaments to the character of Mr. Fischman.

---

[1] Upon agreement of the parties, a $400,000 P/R bond was set with the standard conditions of release and with the following special conditions: (1) continued mental health treatment as directed by Pretrial Services, (2) no contact with a minor without an adult present, (3) monitoring software on all electronic devices plus access to those devices at the request of pretrial services.  See, (Dkt. 4)].

[2] Mr. Fischman has not only fully complied with all of the conditions of pretrial release (PSR ¶ 4), he also voluntarily permitted the placement of monitoring software on his electronic devices shortly after the search of his home in early 2015 well before the case was charged.

DEFENDANT ARNOLD FISCHMAN'S MOTION TO REMAIN ON BOND PENDING DESIGNATION BASED ON
EXCEPTIONAL REASONS UNDER 18 U.S.C. §3145(c)                                                                                          2

## II. EXCEPTIONAL REASONS SUPPORT MR. FISCHMAN'S RELEASE

### A. Section 3145 of the Bail Reform Act Permits the Release of Defendants Otherwise Precluded by Section 3143 for "Exceptional Reasons"

Although a plea to 18 U.S.C. § 2252(a)(4)(B) and (b)(2) subjects Mr. Fischman to mandatory detention under 18 U.S.C. § 3143 ((a)(2), every person subject to detention pursuant to this section, and who meets the conditions of release set forth in in section 3143(a)(1) – i.e., a person who can show by clear and convincing evidence that he is neither a flight risk nor a danger to any person or the community, may be ordered released, under appropriate conditions, "if it is clearly shown that **there are exceptional reasons why such person's detention would not be appropriate."** "Section 3145(c) was intended to provide 'an avenue of relief from the mandatory detention provisions' of the Bail Reform Act." *United States v. Mitchell,* 358 F. Supp. 2d 707, 708 (E.D. WI. 2005), quoting *United States v. Herrera-Soto,* 961 F. 2d 645, 647 (7th Cir. 1992).

### B. Mr. Fischman's Detention Would Not Be Appropriate

Mr. Fischman satisfies the dual requirements of 18 U.S.C. § 3145(c); he meets the conditions of 18 U.S.C. § 3143(a)(1), and exceptional reasons make his detention inappropriate.

#### 1.  Conditions of 18 U.S.C. § 3143(a)(1)

The first requirement of Section 3145 is that the defendant meet the conditions of the "Release . . . of a defendant pending sentencing" statute; 18 U.S.C. § 3143(a)(1) or (b)(1).

Title 18 U.S.C. § 3143(a) permits the release of a defendant pending sentence upon meeting certain requirements by "clear and convincing evidence:"

> [T]he judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence . . . be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c).

18 U.S.C. § 3143(a)(1).

In the 25 months it has taken this matter to proceed to sentencing, Mr. Fischman has demonstrated by clear and convincing evidence that he is unlikely to flee and that he poses no danger to any other person or to the community as recognized by the probation officer in the PSR.

It is also clear through Mr. Fischman's dedication to his son and his own rehabilitation and his genuine remorse for his conduct that he has no intention to flee. As Dr. Welch has expressed to this Court, "I am assuming that because Mr. Fischman has been out on his own recognizance …. since the search of his home that there is no perceived danger of a flight risk but I can add that in my very close relationship with Mr. Fischman over the last year and a half that he is completely committed for many reasons to paying his debt to society." Dkt. 11, Ex. A Page 2.

Moreover, in addition to his son, Max, Mr. Fischman has many deep, personal relationships with others, as demonstrated by the testimonials in the sentencing video (Dkt. 35, Exhibit B) and in the four-dozen letters of support and the many close friends who will be at the sentencing hearings. This outpouring of support belies any sense that Mr. Fishman would fail to surrender to serve his sentence.

Mr. Fischman also poses no danger to any person or the community. Not only does he have no prior convictions but he also has no prior arrests. His conduct while on pretrial release has been exemplary, and the government can identify no potential dangers should he remain on pretrial release. Given the extraordinary extent to which Mr. Fischman has given himself over to the rehabilitation process, with more than 200 hours of self-motivated intensive treatment that is ongoing, Dr. Welch has had a unique opportunity to assess Mr. Fischman's history, mental functioning, character, sexuality, and morality. This access to Mr. Fischman and the intensive nature of the treatment allows Dr. Welch to state,

> *With the highest clinical confidence possible, I can also say Mr. Fischman represents no risk to himself or others now or in the future.* He does not have the psychological profile of a sexual predator and does not have any predatory or impulsive quality to his character. He is extremely gentle and self-effacing, not predatory. These are very enduring and deeply entrenched aspects of his personality. His involvement with pornography was the result of the dynamics described below (in the report) and does not reflect any aggressive or predatory tendencies.

PSR, ¶87; Exhibit C.

### 2. Exceptional Reasons Make Mr. Fischman's Detention Inappropriate

The Ninth Circuit has also recognized that exceptional reasons under 18 U.S.C. § 3145(c) are a basis for continued release in lieu of the mandatory remand requirement of § 3143(a)(2). Exceptional reasons are applicable to Mr. Fischman, due to his continued need for mental health treatment and to provide his expertise and specialized training conducting research pursuant to a State of California research grant that expires this year at Breast Cancer Over Time helping others in the community, as well as his outstanding record of compliance with the conditions of his pretrial release. *See United States v. Garcia,* 340 F.3d 1013, (9th Cir. 2003). Individually and collectively, these exceptional reasons make detention of Mr. Fischman in the county jail inappropriate.

The term "exceptional reasons" is not defined in the statute. As such, the Ninth Circuit, addressing the meaning of that term in *Garcia*, declined to limit the considerations that might bear upon the analysis for either release pending appeal or pending sentencing. See *Garcia,* 340 F.3d at 1015 n.2. On the contrary, after considering the plain text of that section, its legislative history, and the analysis of prior decisions by other courts, the *Garcia* court held that "[b]y adopting the term 'exceptional reasons,' and nothing more, Congress placed **broad discretion in the district court** to consider all the particular circumstances on the case before it and draw upon its broad experience with the mainsprings of human conduct." *Id.* at 1018 (citation and internal quotation marks omitted, emphasis added).

Instead, *Garcia* further explained:

> While we offer some guidance today, we place no limit on the range of matters the district court may consider. Rather, the court should examine the totality of the circumstances and, on the basis of that examination, determine whether, due to any truly unusual factors or combination of factors (bearing in mind the congressional policy that offenders who have committed crimes of violence should not, except in exceptional cases, be released pending appeal) it would be unreasonable to incarcerate the defendant prior to the appellate court's resolution of his appeal.

*Id.* at 1018-19.

Along these lines, *Garcia* identified "**some** of the **factors that alone or in combination with others may qualify**" under § 3145(c). *Id.* at 1019 (emphasis added.) These included: (1) whether the defendant's criminal conduct was aberrational; (2) whether "the defendant led an exemplary life prior to his offense and would be likely to contribute to society significantly if allowed to remain free on bail"; (3) "the nature of the violent act itself"; (4) the length of the prison sentence; (5) whether prison would impose unusual hardships on a defendant due to illness or injury; (6) the nature of a defendant's arguments on appeal; (7) whether "the defendant is exceptionally unlikely to flee or constitute a danger to the community"; and (8) "whether the defendant was unusually cooperative with the government." *Id.* at 1019-21.[3]

Several of these factors weigh in favor of Mr. Fischman's continued release under § 3145(c), although the primary factors is the hardship imposed upon him because of his mental health treatment needs. Currently, Mr. Fischman is in continued psychotherapy with Dr. Bryant Welch. He is also in therapy and treatment at Sharper Future. The focus and dedication shown by Mr. Fischman to date is a commitment he makes not just in the short term but in the long term as well. In accepting responsibility for his actions immediately and in all of the conduct that Mr. Fischman has demonstrated

---

[3] *See, also, United States v. Mitchell,* 358 F. Supp. 2d 707 (E. D. WI. 2005): Court finds exceptional reasons exist in case where defendant pled guilty to cocaine conspiracy. The reasons were: defendant fully cooperated with the government and will receive a 5K1.1 motion at sentencing (the government frequently asks the Court and the Court permits cooperators to remain at liberty pending sentencing); defendant complied completely with conditions of pretrial release; he obtained full time employment; he brought himself up to date on his child support obligations, suggesting that he has renounced criminal activity and is now a family man. Finally, defendant, who owned his own home, was attempting to sell or lease the property finding that it is both in the public interest and the defendant's interest that property not sit vacant while he is incarcerated.

*See, also, United States v. Kaquatosh,* 252 F. Supp. 2d 775 (E.D. WI. 2003): Court finds exceptional reasons exist in case in which defendant pled guilty to two charges of assault causing serious bodily injury. The reasons were: (1) defendant did exceptionally well on pretrial release; (2) defendant obtained employment and is doing well at his job; (3) defendant wants to obtain psychological testing and treatment prior to imprisonment – an idea endorsed by the probation department; and (4) defendant was sending money to his family on the Menominee Reservation, which was benefitting his family greatly.

to date, it is clear that he remains motivated to continue to adhere to intensive psychotherapy which he needs. PSR ¶¶ 76, 77.   The PSR recognizes Mr. Fischman's continued need to address his mental health issues, **Sentencing Recommendations, Justification,** Page 3, when the probation officer states "Because of Mr. Fischman's mental health diagnoses, continued mental health treatment is necessary" and "while incarcerated, Mr. Fischman will need to continue to address his mental health needs."

And, as Dr. Welch explains in supporting the probation officer's Sentencing Report recommendation that Mr. Fischman both continue his mental health care and that he be permitted to self-report, "[P]ermitting Mr. Fischman to self-report until he is designated to a facility for any sentence imposed will avoid a lengthy interruption in his mental health treatment. ….Mr. Fischman has made unusually significant progress throughout his treatment and the added time …. Can help fortify these gains and reduce the negative impact of any disruption in his treatment."  Exhibit A.

The Ninth Circuit explained in *Garcia* that "a severely ill or injured defendant might have exceptional reasons even if the requisite medical treatment is available in prison." *Id.* at 1019.4 Moreover, district courts may consider "the desirability of maintaining an uninterrupted course of treatment while a defendant remains in the care of a particular physician who is providing individual medical supervision to the patient." *Id.* at 1020. As set forth in *Garcia*:

> Although a defendant may ultimately be forced to serve a prison sentence regardless of his health, it may be unreasonable to force him to begin his sentence prior to the resolution of his appeal. Nor do we foreclose the possibility of finding exceptional circumstances in a case in which incarceration would impose exceptional risks on a defendant involving his physical or mental well-being–risks that might arise as a result of the nature of his crime or even as a result of his possessing certain physical, psychological, or other characteristics.

*Id.*

While it is likely true that Mr. Fischman will be able to secure mental health treatment within the confines of the Bureau of Prisons (BOP), the opposite is true if he is remanded to the custody of the Marshal pending designation to the BOP.  Upon remand to the Marshal, Mr. Fischman would find himself either at the Glenn Dyer Facility or at Santa Rita, both Alameda County Jail facilities.  Given that

Mr. Fischman is 69 years old with no other criminal history than this case combined with the nature of the charges in this case, the Marshal would notify the county jail of these facts and the jail would then take steps to ensure the safety of Mr. Fischman based on this information.  Often, for the safety of an inmate with these circumstances, they will be placed in Administrative Segregation (Ad Seg) which is a more restrictive setting than if placed on the general line.  As a deputy marshal advised, "it's more important to secure his safety than his comfort."

While no one can disagree with this rationale, Ad Seg is a much harsher environment where Mr. Fischman would likely remain in his cell for the vast majority of his day.  It is, a much harsher environment than that which he will encounter within the BOP where based on his public safety factors he will be designated to a Low Security facility where he will have freedom of movement within the facility for much of his day. And, while in the County jail awaiting designation and transportation to the BOP, Mr. Fischman will not have the ability to foster a relationship with a therapist, if one exists, and may not, for some time even have access to one.

Surely, continuing Mr. Fischman in mental health treatment with his established professionals with whom he enjoys a trusting relationship for as long as possible furthers the goals of sentencing and rehabilitation.

Mr. Fischman's commitment to the greater good of the community remains a vital driving force in his life.  As the Court is aware, he has provided vital pro bono consulting work to Breast Cancer Over Time (BCOT).  After assisting the volunteers at Breast Cancer Over Time to become a charitable organization, Mr. Fischman then assisted them in obtaining a State of California participatory research grant on which he now spent approximately 20 hours per week researching and recording the chemical content of cosmetics and personal care products used by study part pants to determine if they contain endocrine disrupting chemicals.  BCOT is now in the final months of their study where they are beginning to organize and analyze data for a final report to the State of California.  Because Mr. Fischman is the person most familiar with the research data, BCOT requires Mr. Fischman's analytical

and writing skills to begin the preparation of the final research report which will enable BCOT to meet their grant deadlines which will " contribute to scientific knowledge and public understanding of the role of certain commonly encountered chemicals in causing breast cancer."  Letter of Polly Marshall, Executive Director, Breast Cancer Over Time, Exhibit B.

Finally, the nature of the offense here weighs in favor of continued release.  As reflected in Dr. Welch's report, Mr. Fischman now fully understands, and does not in any way dispute, the potentially devastating impact that even viewing child pornography can have.  Along these lines, the district court in *United States v. Reboux,* upon granting the request for continued release pending sentencing of a defendant charged with possession of child pornography, explained that, although that offense "is labeled a 'crime of violence' for purposes of sentencing pursuant to 18 U.S.C. § 3156(a)(4)(C), Defendant's conduct was not violent." 2007 WL 4409801 at *2.  The same is true here.  This is not to say that the images or videos or chats are not deplorable, because they are.  Obtaining child pornography for private sexual gratification, although wrongful, is not in and of itself an act of violence under any ordinary definition of that term." *Id.*  See, also, Dr. Welch's report which explains the nature of Mr. Fischman's use of child pornography.  *See, e.g., United States v. Szymanski,* 2009 WL 1212249 (N.D. Ohio Apr. 30, 2009) at *2 (granting continued release pending appeal to child pornography defendant sentenced to the mandatory minimum 60 months imprisonment upon finding that he "poses an exceptionally low risk of danger to the community" since his "offense did not involve any sort of confrontation with a child" and he "has no prior history of child abuse").

Indeed, a sampling of cases in this District find that the practice of permitting similarly situated defendants in child pornography cases where 'mandatory' remand is applicable, to remain out of custody pending sentencing, and in some instances, to self-report to their designated institution following sentencing.  In fact, in cases where defendants pled guilty to child pornography offenses requiring remand, the government has concurred (or not requesting remand) despite  the language

contained in 18 U.S.C. § 3143 ((a)(2).[4] *See, United States v. Daniel Sorrentino,* Case No. 16-130 RS, dkt. # 7, April 5, 2016 (change of plea) and finding at sentencing on July 26, 2016 that there were sufficient extraordinary circumstances reflected in the record to waive the requirement for remand. Dkt. # 18; *United States v. Konrad Wolff,* CR 14-638 JD, dkt. #50, December 18, 2015 (change of plea); *United States v. Anthony Josef Norris,* CR 11-852 RS, dkt. # 41 (change of plea) and government then stipulated to an extension of defendant's date of surrender pending the BOP's designation of a facility. See, dkt. ## 56, 57; *United States v. Brandon Damiani,* CR 14-583 LHK, dkt. #10, United States Motion to Allow the Defendant to Remain Out of Custody Pending Sentencing; *United States v. Kamal Kadri*, CR 97-0267 MMC, dkt. # 64, October 28, 2015 (change of plea, following defendant fleeing the United States for 15 years to avoid prosecution) and at sentencing denying the government's motion for remand, February 24, 2016, dkts. # 72, 73.

## CONCLUSION

For the aforementioned reasons, the Court can easily find by clear and convincing evidence that Mr. Fischman is not a flight risk or a danger to the community and can find, using the discretion that the Court has, that exceptional reasons exist for Mr. Fischman's continued release permitting him to self-surrender..  Based upon these exceptional reasons, Mr. Fischman that he be permitted to remain on the same conditions of release.

Dated:  February 8, 2017          Respectfully submitted,

LAW OFFICE OF GAIL SHIFMAN
LAW OFFICES OF WILLIAM I. OSTERHOUDT

/s/ *Gail Shifman*

---

GAIL SHIFMAN
WILLIAM J. OSTERHOUDT
Attorneys for Defendant
ARNOLD FISCHMAN

---

[4] Though advised  by the government that they have required remand on a change of plea for child pornography offenses, this has not been the routine practice in this district or in the experience of undersigned counsel in these cases.